09 CV 7422

Robert Penchina
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- x
A&E TELEVISION NETWORKS,              :
                                      :
                                      :
                    Plaintiff,        :   **COMPLAINT**
          v.                          :   ECF Case
GENUINE ENTERTAINMENT, INC. d/b/a THE :
IDEA FACTORY and REBEL ENTERTAINMENT  :
PARTNERS, INC.,                       :
                    Defendants.       :
-------------------------------------- x

RECEIVED AUG 2 4 2009 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiff, A&E Television Networks ("AETN"), by its attorneys, complains against Defendants Genuine Entertainment, Inc. d/b/a The Idea Factory ("GEI") and Rebel Entertainment Partners, Inc. ("REP"; GEI and REP referred to collectively as "Defendants") as follows:

## THE PARTIES

1. AETN is a partnership organized under the laws of the State of New York having its principal place of business in New York. The partners in AETN are Hearst Communications, Inc., Disney/ABC International Television, Inc., and NBC A&E Holding, Inc., each of which is a corporation organized under the laws of the State of Delaware having its principal place of business in New York.

1

2. Upon information and belief, GEI is a corporation organized under the laws of the State of California with its principal place of business in California.

3. Upon information and belief, REP is a corporation organized under the laws of the State of California with its principal place of business in California.

## JURISDICTION AND VENUE

4. This is an action for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this district. GEI and REP reside in this judicial district pursuant to 28 U.S.C. § 1391(c) and (a)(1) in that they are corporations and subject to personal jurisdiction in this judicial district. Among other bases for jurisdiction, GEI and REP are subject to general jurisdiction in the State of New York as a consequence of their transacting business here. In addition, upon information and belief, GEI maintains an office in New York.

7. An actual case or controversy has arisen between the parties. Defendants have asserted that a reality television program currently in production and scheduled to be aired on one of AETN's television networks is based on an idea that purportedly was conceived by Defendants. Defendants have written to a representative of AETN and

have threatened to initiate litigation against AETN involving numerous claims relating to AETN's use of their supposed idea. Upon information and belief, Defendants have also threatened litigation against other persons involved in the creation and production of the show. Defendants' actions have harmed, and threaten further harm to, AETN.

## FACTS

8. On or about November 24, 2008, AETN announced that production had begun on *Steven Seagal: Lawman* (sometimes referred to as the "Show"), a new reality television series chronicling the life of martial arts expert, international film star and fully commissioned sheriff's deputy Steven Seagal, to be aired beginning later this year on one of AETN's cable television networks, the A&E Network. The show focuses on and depicts Seagal's real life experiences, including his continuing performance of duties as a deputy of the Jefferson Parrish Sherriff's Office—actual real life activity Seagal has undertaken off and on for nearly twenty years.

9. Previously, Defendants sought and obtained meetings with AETN for the purpose of pitching projects to AETN. On or about August 28, 2007, Stephen David, a principal of GEI, met at AETN's offices in New York with A&E Network Vice President Neil A. Cohen and presented ideas for three proposed reality shows: 1) A search for Steven Seagal's sidekick, the premise of which was that unknown contestants would compete to become Steven Seagal's "protégé" or "sidekick" in Seagal's next movie; 2) Steven Seagal as a life coach, which involved Steven Seagal working with people who needed help in standing up to their adversaries; and 3) A take off on the show "The Surreal Life" in which Steven Seagal would be living with Chuck Norris and Jean-Claude Van Damme, among other celebrity martial arts experts—however, at the time of the

pitch none of these celebrity experts had been approached for their participation, nor were they aware of or committed to the project. Defendants informed AETN that Seagal was committed to working with Defendants on a reality television program, and that Defendants could deliver Seagal for a project with AETN.

10. A few days later, AETN rejected the ideas pitched to them by Defendants. Rather, Cohen told Defendants that AETN is not at all interested in doing any contrived competition or other formatted show. Instead, believing that Defendants were representing Seagal, Cohen conveyed to Defendants AETN's own idea to do a reality show that simply portrays Seagal's real life. Of course, many aspects of Seagal's life— including that he had long worked as a deputy sheriff in Louisiana (including during the aftermath of Hurricane Katrina)—were well known to the public, and contributed to AETN's interest in doing a show about Seagal's life in the first place. Defendants indicated that they would try to move forward on a show along the lines of what Cohen described to them.

11. Defendants worked with the idea given to them by AETN through Neil Cohen, but presented no novel or original ideas to AETN. Instead, Defendants suggested only variations of the idea already given to them by AETN, such as giving more or less focus to various aspects of Seagal's real life.

12. The idea of doing an unscripted reality show depicting aspects of a celebrity's life is not novel or original. Numerous such shows had appeared on television in the United States prior to any discussions between AETN and Defendants concerning a show involving Steven Seagal including, for example, *The Osbournes* (depicting the

4

home life of rock star Ozzy Osbourne and his family), *The Anna Nicole Show* (depicting the activities of former Playboy model Anna Nicole Smith), *Hogan Knows Best* (depicting the family life of wrestler Hulk Hogan), *Tommy Lee Goes to College* (depicting rock star Tommy Lee trying to fit in when going to college) and AETN's own *Gene Simmons Family Jewels* (depicting the family life of rock star Gene Simmons), to name just a few.

13. Moreover, the idea of focusing on an unusual aspect of a celebrity's life—including that the celebrity works part-time in law enforcement—is not a novel or original idea. In 2005, before ever discussing the Seagal series with Defendants, AETN produced a program with the working title of "I Shaq the Sheriff" for airing on AETN's Biography network, which program focused on basketball star Shaquille O'Neal's work as a volunteer deputy sheriff. Similarly, in or about January 2007, another network debuted a reality television series called "Armed and Famous," which followed five celebrities (including Erik Estrada, La Toya Jackson and Jack Osbourne) as they trained to become, were sworn in, and acted as, reserve police officers in Muncie, Indiana. Also in 2007, and prior to discussions between AETN and Defendants about Seagal, AETN produced a demo tape with Erik Estrada for a show focusing on Estrada's real-life experiences in law enforcement, but ultimately did not go forward with the project. Thus, whether derived by AETN or Defendants, the idea of doing a reality show focusing on the real life activities of Steven Seagal, including his work as a deputy sheriff, is neither novel nor original.

14. Believing that Defendants could deliver Steven Seagal to appear in their series following Seagal's real-life experiences, AETN from time to time checked in with

Defendants. AETN made clear to Defendants that before AETN would move forward with Defendants on any project involving Seagal, Defendants would have to demonstrate that they had obtained an agreement with Seagal. Defendants never demonstrated such an agreement to AETN. Simply stated, no agreement—expressed or implied—ever was entered into or formed between AETN and the Defendants. Ultimately, Seagal's actual representatives made clear that Defendants did not have authority to deal with AETN on behalf of Seagal, and Defendants could not deliver Seagal to be part of AETN's proposed television series depicting Seagal's life. Thereafter, AETN pursued its idea for the Seagal reality series with Seagal's actual representatives, and, ultimately, with other producers.

15. In or about October, 2007, Defendants communicated to AETN that if AETN moved forward on a Seagal series without Defendants, AETN "could expect a law suit." Over one year later, in or about November, 2008, production of AETN's show *Steven Seagal: Lawman* began and was publicly announced at that time, including in various entertainment industry trade publications and web sites. Defendants did not raise any concerns with AETN after production of the Show was publicly announced, notwithstanding that AETN had further business dealings with both Defendants during that period.

16. Just days ago, as the scheduled debut of the series is getting closer, Defendants raised for the first time an issue concerning AETN's use of Defendants' supposed idea. On August 19, 2009, Defendants wrote to AETN's attorney seeking payment of a vast sum and threatening to file claims against AETN for breach of an implied contract and "breach of confidence," among other claims, purportedly based on

6

AETN's production of the *Steven Seagal: Lawman* series using an idea assertedly submitted by Defendants.

17.  Defendants have no legally viable claim against AETN. The claims Defendants threatens to file against AETN are based on allegations that AETN supposedly used an idea submitted by Defendants, rather than AETN's own idea. Assuming, *arguendo*, and contrary to the facts, that Defendants could even prove that AETN's Show is based on an idea provided by Defendants, any such ideas supplied by Defendants and used by AETN were neither novel nor original and contained no elements not already known to AETN. Lacking such novelty and originality, Defendants' alleged idea simply is not protectable and cannot provide the basis for *any* claim made by Defendants against AETN.

## AETN'S REQUESTS FOR DECLARATORY RELIEF
## COUNT I—DECLARATION OF NO DIRECT LIABILITY

18.  AETN realleges and reincorporates all of the above allegations as though set forth fully herein.

19.  Defendants have claimed that AETN is directly liable to them under various theories of direct liability based on AETN's use of an idea allegedly provided to AETN by Defendants. Defendants have threatened to bring suit against AETN to enforce these claims.

20. An actual, present and justiciable controversy has arisen between AETN and Defendants concerning AETN's ability to continue to produce and air the Show without incurring direct liabilities to Defendants.

21. AETN has suffered and will continue to suffer irreparable harm as a result of communications made, upon information and belief, by Defendants to third parties in which Defendants assert that AETN has violated the law by making use of an idea allegedly submitted to AETN by Defendants.

22. Any use by AETN in connection with its Show of any idea supplied by Defendants is legally permissible and non-actionable because, whether considered from the viewpoint of AETN or the world at large, such ideas are not novel or original.

23. Defendants' allegations that AETN is breaching an implied in fact contract, is breaching a confidence, or otherwise directly violating any rights of or obligations to Defendants warrant judicial relief from this Court in the form of a declaration that the idea allegedly supplied by Defendants and used by AETN is not novel or original and AETN is not directly liable to Defendants under any legal theory based upon the creation, production, airing or other use of the series *Steven Seagal: Lawman* or any idea expressed therein that was allegedly supplied by Defendants.

## COUNT II—DECLARATION OF NO SECONDARY LIABILITY

24. AETN realleges and reincorporates all of the allegations set forth in Paragraphs 1 through 17 as though set forth fully herein.

25. Defendants have claimed that AETN is secondarily liable to them under various theories of secondary liability based on AETN's alleged use, in conjunction with third parties, of an idea allegedly provided to AETN by Defendants. Defendants have threatened to bring suit against AETN to enforce these claims.

26. An actual, present and justiciable controversy has arisen between AETN and Defendants concerning AETN's ability to continue to produce and air the Show without incurring secondary or other indirect liabilities to Defendants.

27. AETN has suffered and will continue to suffer irreparable harm as a result of communications made, upon information and belief, by Defendants to third parties in which Defendants assert that AETN has violated the law by making use, in conjunction with third parties, of an idea allegedly submitted to AETN by Defendants.

28. Any activity undertaken by AETN in conjunction with third parties in connection with its Show was legally permissible and non-actionable because, whether considered from the viewpoint of AETN or the world at large, those activities related to use of an idea that is not novel or original.

29. Defendants' allegations that AETN is secondarily or indirectly liable to Defendants under any legal theory warrant judicial relief from this Court in the form of a declaration that the idea allegedly supplied by Defendants and used by AETN is not novel or original and AETN is not secondarily or indirectly liable to Defendants under any legal theory based upon activities relating to the creation, production, airing or other use of the series *Steven Seagal: Lawman*.

## PRAYER FOR RELIEF

WHEREFORE, AETN prays for a declaratory judgment in its favor against Defendants for the following relief:

(1) For an Order declaring that any idea submitted by Defendants to AETN in connection with AETN's television series *Steven Seagal: Lawman* was neither novel nor original to the world at large or to AETN.

(2) For an Order declaring that because Defendants' idea was neither novel nor original, it was and is not protectable by means of an implied contract, an implied duty of confidentiality or any other legal theory.

(3) For an Order declaring that AETN is not directly liable to Defendants under any legal theory based upon the creation, production, airing or other use of the series *Steven Seagal: Lawman* or any idea expressed therein that was allegedly supplied by Defendants.

(4) For an Order declaring that AETN is not secondarily or indirectly liable to Defendants under any legal theory based upon activities relating to the creation, production, airing or other use of the series *Steven Seagal: Lawman*.

(5) That AETN recover all expenses and costs in connection with this suit, including reasonable attorneys' fees incurred in connection with this suit.

(6) That AETN be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 24, 2009

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: _____
Robert Penchina

321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

Attorneys for Plaintiff A&E Television Networks

11